**Michael J. MURPHY**

v.

**MONROE COUNTY TAX CLAIM BUREAU and Joseph Squires,**

**Appeal of Joseph Squires and John Robson.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 12, 2001.

Decided Oct. 19, 2001.

---

Steven D. Gladstone, Mt. Pocono, for appellants.

F. Andrew Wolf, Stroudsburg, for appellees.

Before KELLEY, Judge, FLAHERTY and JIULIANTE, Senior Judges.

JIULIANTE, Senior Judge.

Joseph Squires and John Robson (Purchasers) appeal from the December 11, 2000 order of the Court of Common Pleas of Monroe County (trial court) that granted a petition filed on behalf of Michael Murphy to set aside the tax sale of Murphy's real property (subject property) located in Mountaintop Estates, Smithfield Township, Monroe County. Purchasers contend that the trial court erred (1) in failing to determine that Murphy's petition to set aside the tax sale was barred by the six-month statute of limitations contained in Section 5522(b)(5) of the Judicial Code, 42 Pa.C.S. § 5522(b)(5); and (2) in failing to determine that the Monroe County Tax Claim Bureau (Bureau) sufficiently complied with the notice provisions of the Real Estate Tax Sale Law (Tax Sale Law).[1] We affirm.

The trial court found the following facts. Murphy purchased the subject property, an undeveloped residential building lot, in 1967. Murphy failed to pay the 1994 school real estate tax and the Bureau subsequently scheduled a tax sale of the property for September 20, 1996.

On July 23, 1996, the Bureau sent notice of the sale to Murphy by certified mail, restricted delivery, return receipt requested, at the address of 2 Palma Road, Katonah, N.Y. 10536. The notice of sale was returned to the Bureau marked "attempted, no such street." The Bureau then sent a notice by first class mail to Murphy at 2 Palma Road, Yonkers, NY. That notice was returned marked "no such number."

On August 26, 1996, the Bureau mailed an inquiry to the Property Owners' Association of Mountaintop Estates (POA) seeking to find the addresses of property owners who had not paid their taxes. The Bureau received no response from POA and did not follow up on the inquiry.

Murphy never lived in Katonah or Yonkers, NY. His correct address was 2 Palma Road, Somers, N.Y. 10589. POA, of which Murphy was at all relevant times a paid-in-full member, had his correct address.

On September 20, 1996, the Bureau sold the subject property to Purchasers. Murphy did not learn of the tax sale until he

---

1. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101–5860.803.

received a September 29, 1999 letter from POA.

In the interim, Purchasers had filed an action to quiet title and on August 19, 1999, a final order was entered quieting title against Murphy. On November 19, 1999, Murphy filed a petition to file exceptions *nunc pro tunc* to the order quieting title. On January 7, 2000, Murphy's petition was granted and on October 13, 2000, he filed a petition to set aside the tax sale.

■ The trial court determined that Murphy did not receive proper notice of the tax sale and that the Bureau did not take sufficient action by following up on its inquiry to POA. The trial court further determined that the six-month statute of limitations in 42 Pa.C.S. § 5522(b)(5), which applies to actions to set aside judicial sales of property, did not apply to upset tax sales conducted by the Bureau. The trial court reasoned that tax sales conducted by the Bureau are different from judicial sales ordered by the courts. As a result, the trial court granted Murphy's petition to set aside the tax sale and directed that Purchasers file a quit claim deed upon being reimbursed by the Bureau. Purchasers' appeal to this Court followed.[2]

### I.

Purchasers' first argument is that tax upset sale is a *judicial* sale within the meaning of 42 Pa.C.S. § 5522(b)(5), which provides in relevant part: "The following actions and proceedings must be commenced within six months: .... [a]n action or proceeding to set aside a judicial sale of property." In support of their position, Purchasers cite *Kalantary v.*

*Mention,* 756 A.2d 671 (Pa.Super.2000), where the Superior Court stated that the limitations period in 42 Pa.C.S. § 5522(b)(5) would be a secondary meritorious defense to a petition to open a default judgment filed three years after the alleged tax sale.

In response, Murphy cites *Forsythe v. Franklin County Tax Claim Bureau,* 12 Pa. D. & C.4th 283 (CCP.1990), where the Franklin County Court of Common Pleas concluded that upset tax sales are different from judicial sales and, therefore, that the six-month statute of limitations in 42 Pa. C.S. § 5522(b)(5) is inapplicable to petitions to set aside tax sales. In *Forsythe,* the Court stated:

> The said respondents urge that the court find the instant sale was a "judicial sale," and that a six-month statute of limitations is applicable. 42 Pa.C.S. § 5522(b)(5). It is noted that petitioner had actual notice of the upset sale on January 16, 1990, and thus if we found that this provision were applicable, the instant proceeding, filed July 31, 1990, would have been approximately 15 days beyond the limit set forth in the statute.

> Respondents' position ignores the statutory scheme set forth in the Real Estate Tax Sale Law. That statute provides for upset sale (which is what occurred herein) in the first instance. 72 P.S. §§ 5860.601–5860.609. If the upset sale price is not bid, the Tax Claim Bureau may sell the real estate via a private sale, 72 P.S. §§ 5860.613–5860.615, or by petition to the Court of Common Pleas for a judicial sale. 72 P.S. §§ 5860.610–5860.612.1.

**2.** In tax sale cases, our review is limited to determining whether the trial court abused its discretion, rendered a decision without a lack of supporting evidence, or clearly erred as a matter of law. *Sabbeth v. Tax Claim Bureau*

*of Fulton County,* 714 A.2d 514 (Pa.Cmwlth. 1998), ·*appeal denied,* —— Pa. ——, —— A.2d ——, (No. 818 M.D. Alloc. Dkt.1998, filed April 13, 1999).

*The Supreme Court of Pennsylvania has distinguished between a "judicial sale," i.e. a sale which must be based upon an order or decree directing the sale, and a situation where there is "judicial assent" to a sale. Baton Coal Company Appeal, 365 Pa. 519, 76 A.2d 194 (1950). The instant proceeding was a tax claim sale conducted by the Tax Claim Bureau of Franklin County pursuant to its statutory authority and obligation set forth in the Real Estate Tax Sale Law. No order or decree of the court directed or authorized the sale, and the instant sale was clearly not a "judicial sale." See also In re Petition of Acchione, 425 Pa. 23, 227 A.2d 816 (1967). Therefore, the statue of limitations relied upon by respondents is inapposite and we will grant petitioner's petition for relief.* (Emphasis added.) 12 Pa. D & C.4th at 288–289.

■ This Court finds the rationale in *Forsythe* to be persuasive in the present case. An upset tax sale conducted by a tax claim bureau is not a *judicial* sale. If the legislature had intended for the six-month limitations period in Section 5522(b)(5) to apply to upset tax sales conducted by the tax claim bureau, it could have so specified.

It is well settled that whenever possible, a statute must be construed to give effect to every word contained therein. Section 1921(a) of the Statutory Construction Act of 1972; 1 Pa.C.S. § 1921(a); *Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616 (Pa.Super.1999), *appeal denied*, 561 Pa. 700, 751 A.2d 193 (2000). Section 5522(b)(5) clearly applies to actions to set aside *judicial* sales.

As noted in *Forsythe*, a *judicial* tax sale is governed by Sections 610–612 of the Tax Sale Law, 72 P.S. §§ 5860.610–5860.612. These sections provide a *judicial* remedy where the upset price has not been bid at

the tax sale conducted by the Bureau. In such a case, pursuant to Section 610 of the Tax Sale Law, the Bureau may petition the common pleas court for a judicial tax sale. Pursuant to Section 612, if the court is satisfied that the necessary requirements are met, it shall order that the property be sold at a subsequent date to be set by the court.

In contrast, an upset tax sale by the Bureau is governed by Sections 605–609 of the Tax Sale Law, 72 P.S. §§ 5860.605–609. An upset tax sale is a prerequisite to a judicial tax sale and is conducted by the Bureau in accordance with the notice provisions set forth in Sections 607 and 607a of the Tax Sale Law, 72 P.S. § 5860.607 and 5860.607a. "[T]he notice requirements for a tax or upset sale conducted under Sections 601 through 609 of the Law are more rigorous than those applicable to a judicial sale." *In re Serfass*, 651 A.2d 677, 679 (Pa.Cmwlth.1994).

Furthermore, when property is sold at an upset tax sale, no judicial sale of the property is necessary. Consequently, no petition need be filed in the common pleas court and, therefore, no court order is needed for the property to be sold. Therefore, an upset tax sale conducted by the Bureau cannot be considered to be a *judicial* sale.

In view of the foregoing, this Court believes for purposes of determining the applicable statute of limitations, that a *judicial* tax sale governed by Sections 610–612 of the Tax Sale Law is a separate and distinct action from an upset tax sale governed by Sections 605–609 of the Tax Sale Law. As a result, we conclude that the trial court did not err in determining that the six-month limitation in 42 Pa.C.S. § 5522(b)(5) on actions to set aside *judicial* sales did not apply to Murphy's peti-

tion to set aside the upset tax sale in the case *sub judice.*

## II.

Purchasers' second argument is that the Bureau complied in all respects with the requirements of the Tax Sale Law and that the trial court erred in determining that the Bureau failed to comply with the notice requirements of Section 607.1(a) of the Tax Sale Law,[3] 72 P.S. § 5860.607a(a). That section provides in pertinent part:

When any notification of a pending tax sale or tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or other under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether the notification efforts have been successful, a notation shall be placed in the proper-

ty file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

The trial court noted that because the Bureau's first two attempted notices by mail were returned due to incorrect addresses, it was imperative upon the Bureau to make reasonable efforts to find Murphy's correct address. The trial court then determined that the Bureau failed to comply with the "reasonable efforts" requirement of Section 607.1(a) by failing to conduct a follow-up inquiry with POA after no response was received to the Bureau's initial inquiry.

To the contrary, Purchasers contend that the Bureau made reasonable efforts to locate Murphy as required by Section 607.1(a). Purchasers argue that just because POA failed to respond to the Bureau's inquiry does not mean that the Bureau failed to fully comply with its duty to make reasonable efforts to notify Murphy of the upset tax sale.

To support their position, Purchasers cite *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137, 1142 (Pa. Cmwlth.1997), where this Court stated that although due process requires tax claim bureaus to conduct reasonable investigations to determine the identity and whereabouts of the latest record owners of the property, "the bureaus' duty to investigate such matters is confined to determining the owners of record and then to use ordinary common sense business practices to ascertain proper addresses where notice of the tax sale may be given." Purchasers argue that it is unreasonable in the present case to impose upon the Bureau the burden of continually following up on cor-

---

**3.** Added by Section 30 of the Act of July 3, 1986, P.L. 351.

respondence it sent to a membership organization to which the taxpayer belonged.

This Court disagrees. In July of 1996, the Bureau had attempted notice twice by mail to two different addresses and each was returned due to an incorrect address. On August 26, 1996, the Bureau dispatched a written inquiry to POA asking for addresses of property owners whose properties were scheduled for tax sale. The Bureau's letter requested a response by September 7, 1996. POA never responded to this inquiry.

 It is well settled that the notice provisions are to be strictly construed and that strict compliance with the notice provisions is essential to prevent the deprivation of property without due process. *Ban v. Tax Claim Bureau of Washington County*, 698 A.2d 1386 (Pa.Cmwlth.1997). The purpose of a tax sale is not to strip an owner of his property but rather to insure the tax on the property is collected. *Tracy v. County of Chester, Tax Claim Bureau*, 507 Pa. 288, 489 A.2d 1334 (1985). At a minimum, due process requires that if reasonably possible, a government must notify an owner before his property is sold at an upset tax sale. *Id.*

 In the case at bar, inasmuch as the two notices mailed by the Bureau were returned due to incorrect addresses, the trial court did not err in determining that pursuant to Section 607.1(a) of the Tax Sale Law, the Bureau had a duty to follow up on its written inquiry to POA, especially in light of the fact that POA did not respond one way or the other by September 7, 1996. *Tracy.* Further, the Bureau's failure to make such a follow-up inquiry to POA, which, in fact, did have Murphy's correct address, supports the trial court's conclusion that the Bureau failed to comply with the statutory mandate that it make a reasonable effort to determine Murphy's correct address. As such, the trial court did not err in granting Murphy's petition to set aside the tax sale on the ground that the Bureau's efforts to notify Murphy of the sale were not "reasonable" as contemplated by the additional notice requirement provisions of the Tax Sale Law. *Tracy.*

In view of the foregoing, the order of the trial court is affirmed.

### ORDER

AND NOW, this 19th day of October, 2001, the December 11, 2000 order of the Court of Common Pleas of Monroe County is hereby affirmed.